### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN CUTILLO, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-02787-JMG |
| | : | |
| DAVID CUTILLO, et al., | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

**GALLAGHER, J.**                                                          **June 22, 2022**

Plaintiffs Dawn Cutillo and Infinity Health, LLC ("IH") filed a Complaint against David Cutillo, Infinity Health Advisors LLC, ("IHA"), and intervenor IHA Distribution, LLC ("IHAD") pursuant to 17 U.S.C. § 101 et. seq., 18 U.S.C. § 1030, and Pennsylvania state law. Plaintiffs' claims arise out of a dispute with Defendant Mr. Cutillo, Ms. Cutillo's older brother, regarding their joint commercialization and franchising of the natural hormone balancing methodologies Ms. Cutillo developed. Before the Court is Defendants' partial motion to dismiss. For the reasons explained below, the motion will be granted in part and denied in part.

## I.      BACKGROUND[1]

Plaintiff Ms. Cutillo is the author and owner of the copyright to the book "The Hormone Shift" and a set of instructional materials "The Works" based on the methodologies described in the book. Second Amended Complaint ¶ 8, ECF No. 67 ("Complaint"); Motion to Partially Dismiss Plaintiffs' Second Amended Complaint 3, ECF No. 70 ("MTD"). Ms.

---

[1]      This summary is premised on the factual allegations contained in the complaint.  For purposes of this motion, the allegations are presumed to be true and are construed in the light most favorable to Plaintiffs.

Cutillo began commercializing the methodologies described in "The Works" in 2010. Complaint ¶ 10. In or around 2014, Ms. Cutillo and Mr. Cutillo formed a corporation, IHA, to pursue the franchising of these methodologies. Complaint ¶ 12; MTD 3. Over the next several years, the siblings successfully grew the business together, franchised the methodology to IHA, formed a distribution arm of IHA, and entered into an Operating and a License Agreement. Complaint ¶¶ 13, 15; MTD 3-4.

Regrettably, the sibling's personal and professional relationship has since deteriorated and in 2021, Plaintiffs Ms. Cutillo et al. filed their lawsuit against Defendants Mr. Cutillo at al.

## II.    STANDARD

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). To that end, a complaint cannot rely on mere "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

A three-step framework governs our review of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Second, we "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of

truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

At the motion to dismiss stage, we "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

## III.   DISCUSSION

Defendants move to dismiss seven of Plaintiffs' eleven claims and their demand for punitive damages. These include Plaintiffs' claims for copyright infringement (Count One), breach of fiduciary duty (Count Two), violations of the Pennsylvania Limited Liability Company Law of 2016 (Count Three), fraudulent inducement (Count Six), breach of contract (Count Seven and Count Ten), and violation of the Computer Fraud and Abuse Act (Count Eight). We address these claims in turn.

### 1.   Copyright Infringement

In Count One, Plaintiff Ms. Cutillo raises a copyright infringement claim under the U.S. Copyright Act, 17 U.S.C. § 101 et seq. Complaint ¶¶ 35-37. Defendants argue their exclusive license to Plaintiff's copyrighted materials negates the copyright infringement claim. MTD 12-13. The Court agrees.

"To establish a claim of copyright infringement, a plaintiff must show: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018). Even assuming these elements are met, Plaintiff's claim fails because Defendants present a valid defense with sufficient factual support

on the face of the complaint.[2] Under the Copyright Act, the owner of a copyright can transfer ownership of the copyright by selling it or by exclusively licensing it. *See* 17 U.S.C. § 106. "The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." 17 U.S.C. § 201(d)(2).

An exclusive license is a defense to a copyright infringement claim. *See Lowe v. Loud Recs.,* 126 F. App'x 545, 547 (3d Cir. 2005). ("Given [the exclusive] license, [plaintiff] cannot establish a cause of action for copyright infringement."); *see also Gillan & Hartmann, Inc. v. Kimmel Bogrette Architecture ± Site, Inc.,* 2015 WL 3444305, at *6 (E.D. Pa. May 28, 2015) ("Defendant's exclusive license to the copyright [] is a defense to the copyright infringement claim.").

It is undisputed that Plaintiff granted Defendants "the perpetual, exclusive, royalty free right" to "The Works" and related materials to "use in the manner determined by [Defendants]." Exclusive Master Distributor and License Agreement ¶ 1(c), (ECF No. 60-2, Exhibit A) ("License"); Complaint ¶ 15. Accordingly, Defendants' exclusive license to "The Works" and related materials is a viable defense against Plaintiff's claim of copyright infringement and the claim must be dismissed.

### 2. Breach of Fiduciary Duty

In Counts Two and Three, Plaintiffs raise breach of fiduciary duty claims. Complaint ¶¶ 44-45, 49-50. In Count Two, Plaintiffs allege Defendant Mr. Cutillo breached his fiduciary duty as the majority member and manager of IHA. Complaint ¶¶ 44-45. In Count Three, they allege

---

[2]   An affirmative defense can be considered in the context of a motion to dismiss when its validity is clear from the facts asserted by the plaintiff in his complaint. *See In re Tower Air, Inc.,* 416 F.3d at 229, 238 (3d Cir. 2005); *also see Fleet Nat. Bank v. Boyle,* 2005 WL 2455673, at *16 (E.D. Pa. 2005); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

Defendant breached his statutory duties of loyalty, duty of care, and good faith and fair dealing in violation of Pennsylvania Limited Liability Company Law. *Id.* ¶¶ 49-50. The Court construes these claims together.

"The elements of a breach of fiduciary duty claim are (1) the fiduciary duty exists and (2) the fiduciary breached that duty." *In re Tropicana Ent., LLC,* 520 B.R. 455, 470 (Bankr. D. Del. 2014). "It has long been recognized that majority shareholders have a duty to protect the interests of the minority . . . it is a breach of fiduciary duty to benefit oneself at the expense of the minority shareholders." *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 100–101 (3d Cir. 2001). A manager of a manager-managed limited liability company also owes to the company and the members the duties of loyalty, care, and good faith and fair dealing. *See* 15 Pa. C.S. § 8849.2 (a)(b)(c)(d).[3] A majority shareholder may not use the corporate process to deny minority shareholders the right to participate in the corporation or to exclude minority shareholders from their proper share of benefits accruing from the enterprise. *See Viener v. Jacobs,* 834 A.2d 546, 556 (Pa.Super.Ct. 2003); *see also Orchard v. Covelli,* 590 F.Supp. 1548, 1556 (W.D. Pa. 1984) ("Self-dealing is present when the minority shareholder is denied the right to participate in the benefits of the corporation.")

Similarly, a majority shareholder may not "freeze out" minority shareholders. *See Bair v. Purcell*, 500 F. Supp. 2d 468, 484 (M.D. Pa. 2007). A "freeze-out" occurs in a closely held corporation when a minority shareholder's power or compensation is substantially diminished in

---

[3]     The statutory fiduciary duty of loyalty of a manager of a manager-managed limited liability company includes the duty to account to the company and to hold as trustee for it any property, profit or benefit derived by the manager from his use of company property. 15 Pa. C.S.§8849.2 (b). The duty of care includes refraining from engaging in gross negligence, recklessness, willful misconduct, or knowing violation of law. 15 Pa. C.S.§8849.2 (c), and the duty of good faith and fair dealing indicates a manager shall discharge his duties and obligations and exercise any rights consistently with the contractual obligation of good faith and fair dealing. 15 Pa. C.S.§8849.2 (d).

an attempt to exclude the shareholder from a meaningful role in the corporation or deny her benefits from the corporation. *Id.* Tactics employed against a minority shareholder to effect such a "freeze-out" include, but are not limited to: generally oppressive conduct, restricting or precluding employment in, or access to, the corporation, paying excessive salaries to majority stockholders, withholding information relating to the operation of the corporation, failure to hold meetings and excluding the minority from corporate decision-making. *Id.* "Such an attempt by a majority shareholder to 'freeze-out' or 'squeeze-out' a minority shareholder constitutes a breach of [] fiduciary duty." *Id.*

Defendant does not dispute he owes duties to Plaintiffs as the minority shareholders of IHA. MTD 21-25. But he contends Plaintiffs "have not pled facts sufficient to bring a direct action" and failed to show a harm that "is independent of harm to IHA." MTD 21-22. Further, Defendant argues that, in any case, he is insulated from liability under Pennsylvania's business judgement rule. MTD 28-29. The Court disagrees.

Plaintiffs allege that Defendant engaged in personally oppressive and injurious acts including: withholding company operational information from Plaintiff Ms. Cutillo, excluding her from events, preventing physical access to the building, excluding Plaintiff from corporate decision making by preventing communication with IHA personnel and franchisees, appropriating corporate assets for personal expenses such a hiring a personal nanny for a $45,000 annual salary, nepotistic hiring and overpayment of Defendant's family and friends, and withholding Ms. Cutillo's compensation and reimbursements. Complaint ¶ 26.

Plaintiffs' pleading adequately allege direct harm that is distinct from IHA. Considering Plaintiffs' pleading in the light most favorable to them, as we must, the Court finds Plaintiffs have sufficiently pled that Defendant breached his fiduciary duties.

6

Further, Defendant is not protected by the business judgement rule. "We will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)." *In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005). *"*The business judgment rule may be considered in the context of a Rule 12(b)(6) motion to dismiss only when the applicability of the rule appears on the face of the complaint, and the plaintiff alleges no facts that would defeat the presumption that the rule applies." *In re Reading Broad., Inc.,* 390 B.R. 532, 555 (Bankr. E.D. Pa. 2008); *Fleet Nat. Bank v. Boyle*, 2005 WL 2455673, at *16 (E.D. Pa. 2005).

Here, Plaintiffs allege breach of fiduciary duty and self-dealing each of which could defeat the presumption that the business judgment rule applies. *See In re Tower Air, Inc.,* 416 F.3d at 239 (The business judgment rule required dismissal of breach of fiduciary duty claim.). There is no basis now, considering the allegations in the Complaint, upon which the Court can currently determine whether the business judgment rule should apply. Accordingly, this defense must be considered after the completion of discovery. *See In re Reading Broad., Inc.* 390 B.R. at 555-556 ("This defense [the business judgment rule] must be prosecuted after discovery has been completed.").

Because Plaintiffs adequately factually alleged their breach of fiduciary duty claims, and the business judgment rule does not apply at this stage of the proceedings, Defendants' motion to dismiss Counts Two and Three of the Complaint will be denied.

### 3. Fraudulent Inducement

In Count Six, Plaintiffs raise a fraudulent inducement claim. Plaintiffs allege Defendant Mr. Cutillo procured Plaintiff Ms. Cutillo's agreement to enter into the licensing and operating agreements by falsely promising a $200,000 capital contribution. Complaint ¶¶ 23-26.

7

Pennsylvania law requires that a plaintiff bringing a claim for fraud in the inducement allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Freeman v. Pittsburgh Glass Works*, LLC, 709 F.3d 240, 257 (3d Cir. 2013).

Defendants challenge only element five - justifiable reliance. To justifiably rely is to justifiably engage in some detrimental activity because of the defendant's misrepresentation or deceptive conduct. *See Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 511 (E.D. Pa. 2010).

Plaintiffs allege Ms. Cutillo relied on Mr. Cutillo's oral promise to contribute $200,000 to IHA before signing the parties' license agreement. Complaint ¶¶ 16, 23-26, 63. However, this alleged oral representation does not appear in the parties' fully integrated agreement. [4] License ¶ 20.

In Pennsylvania, fraud-in-the-inducement claims are generally barred if the contract at issue is fully integrated. *See Partners Coffee Co., LLC v. Oceana Servs. & Prod. Co.*, 700 F. Supp. 2d 720, 731-732 (W.D. Pa. 2010). Further, "case law clearly holds that a party cannot

---

[4]     "The parol evidence rule bars prior or contemporaneous oral representations or agreements about a subject that is specifically dealt with in a written contract where the contract covers the entire agreement of the parties ..." *Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc.*, 2007 WL 2254422, at *3 (E.D. Pa. Aug. 2, 2007). In Pennsylvania, parol evidence is not allowed to show fraud-in-the-inducement. *Id.* "The general rule is that where the alleged oral representations concern a subject which is specifically addressed in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, mere allegations of falsity or fraud will not make parol evidence admissible." *Blumenstock v. Gibson*, 2002 Pa. Super. 339, P16 (2002).

justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. 2002). A plaintiff "cannot claim justifiable reliance when she soon thereafter signed a written contract that explicitly contradicted the alleged oral promise." *Schnell v. Bank of New York Mellon,* 828 F. Supp.2d 798, 808 (E.D. Pa 2011).

Accordingly, Ms. Cutillo cannot claim she justifiably relied on Mr. Cutillo's alleged oral representation after she later signed a contract that did not include this representation. Thus, Plaintiffs cannot establish element five of the prima facie case of fraudulent inducement and Defendants' motion to dismiss Count Six of the Complaint will be granted.

### 4. Breach of Contract

In Counts Seven and Ten, Plaintiff IH raises breach of contract claims. In Count Seven, Plaintiff alleges IHA anticipatorily repudiated its contract with IH by "unambiguously stat[ing] its intention to depart from IH's specifications for the BeBalanced methodology." Complaint ¶¶ 68-70. In Count Ten, Plaintiff alleges Defendant breached its contract with IH by "failing to make payments to IH pursuant to Paragraph 3 of the License Agreement." Complaint ¶ 83. The Court will discuss these breach of contract claims together.

To state a breach of contract claim under Pennsylvania law, a plaintiff must plead (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d. Cir. 2003). Plaintiffs' Second Amended Complaint satisfies all three requirements.

The promisor's renunciation of a "contractual duty before the time fixed in the contract for... performance" is an anticipatory repudiation. *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002). "Such a repudiation ripens into a breach prior to the time for performance only if

the promisee elects to treat it as such." *Id.* "[R]epudiation gives the promisee the right of electing either to wait until the time for the promisor's performance has arrived, or to act upon the renunciation and treat it as a final assertion by the promisor that he is no longer bound by the contract." *Id.*

Here, Plaintiff has elected to treat Defendant's repudiation as a breach and has adequately factually alleged the elements of its claim. It fulfills element one by noting the existence of the contract and its essential terms averring that the License Agreement "reflect[s] IH's sublicense to IHA to make use of "The Works" and other associated intellectual property in the conduct of IHA's business." Complaint ¶ 15. Plaintiff also adequately factually alleged the breach of that contract and resultant damages. Complaint ¶¶ 17 (a-o), 18.

In Count Ten, Plaintiff adequately alleges its claims here as well, alleging IHAD breached its contract by "failing to make payments due to IH under the License Agreement pursuant to paragraph three of the license agreement." Complaint ¶¶ 26 (e), 81-84. Accordingly, Defendants' motion to dismiss Counts Seven and Ten of the Complaint will be denied.

### 5. Violation of the Computer Fraud and Abuse Act (CFAA)

Finally, in Count Eight, Plaintiff IH raises a claim against Defendants under the CFAA. Plaintiff bases this claim on 18 U.S.C. § 1030(a)(5)(A), which provides a civil cause of action against a defendant who: knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer. *See* 18 U.S.C. § 1030(a)(5)(A).

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as any reasonable cost to a victim, including the cost of responding to an offense. 18 U.S.C. § 1030(e)(11). A

"protected computer" is a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. §1030(e)(2)(B).

Plaintiff adequately alleges that beginning in September 2020, Defendants caused impairment to the functionality of IH's computers by the transmission of a program or command that prevented Plaintiff from communicating with and accessing vendors and other potential business partners. Complaint ¶¶ 29, 73. *See QVC, Inc. v. Resultly, LLC,* 159 F. Supp. 3d 576, 593 (E.D. Pa. 2016.) ("It would be sufficient to allege that the defendant . . . engage[d] in activity that he knew would impair the functionality of a protected computer.").

Plaintiff also adequately pled "loss" alleging that it paid $5000 in technology consultant fees to address Defendants' interference; as well as adequately pleading that its computers were "protected," being on a shared connected network. *Id.* ¶¶ 27-28, 31-32, 74; *See Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 668 (E.D. Pa. 2018) ("A computer is 'protected,' if it is connected to the internet.").

Accordingly, The Court find that Plaintiff's allegations have satisfied the requirements of a 28 U.S.C. § 1030(a)(5)(A) claim and Defendants' motion to dismiss Count Eight of the Complaint will be denied.

### 6. Punitive Damages

Plaintiffs also seek punitive damages from Defendant Mr. Cutillo for his alleged breach of fiduciary duty. Complaint ¶¶ 47, 52. Defendants argue Plaintiffs have not "pled facts sufficient to meet the threshold required for punitive damages." MTD 29. However, having determined Plaintiffs adequately pled breach of fiduciary duties and alleged sufficient facts to support a claim for punitive damages, we find that Plaintiffs' allegations, if proven, could support a claim for punitive damages under Pennsylvania law.

"Pennsylvania has adopted Section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating actual damages, also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiff's rights." *W.V. Realty, Inc. v. N. Ins. Co*., 334 F.3d 306, 318 (3d Cir. 2003). "Both intent and reckless indifference will constitute a sufficient mental state." *Id.*

Further, "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy,* 870 A.2d 766, 772 (Pa. 2005).

Recognizing that Plaintiffs will ultimately be required to satisfy an exacting burden of proof to sustain their punitive damages claim and because the question of whether punitive damages are proper often turns on the defendant's state of mind, this question frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial. *See  Allfrey v. Ggnesc E. Stroudsburg LP,* 2018 WL 8494877, at *5–6 (M.D. Pa. Apr. 9, 2018*);see also  In re Lemington Home for the Aged,* 777 F.3d 620, 631 (3d Cir. 2015).

Therefore, at this early stage of the litigation, having adequately alleged the ways in which Defendants' actions were abusive, willful, oppressive, and/or intentional, Plaintiffs have alleged sufficient facts to permit this case to proceed forward on their punitive damage demand. Accordingly, Defendants' motion to dismiss Plaintiffs' demand for punitive damages will be denied.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants' motion is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge