IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN CUTILLO, et al., : | |
|     Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:21-cv-02787-JMG |
| : | |
| DAVID CUTILLO, et al., : | |
|     Defendants. : | |

MEMORANDUM OPINION

**GALLAGHER, J.**                                          **May 19, 2023**

  Plaintiffs Dawn Cutillo and Infinity Health, LLC ("IH") have alleged federal and state law claims against Defendants David Cutillo, Infinity Health Advisors LLC, ("IHA"), and intervenor IHA Distribution, LLC ("IHAD"). Plaintiffs' claims arise out of a dispute with Defendant David Cutillo, Dawn Cutillo's older brother, regarding their joint commercialization and franchising of the natural hormone balancing methodologies Dawn Cutillo developed. Defendants have filed a Motion for Sanctions, alleging Plaintiffs filed the Second Amended Complaint for the improper purpose of harassing and intimidating IHA management, and that Plaintiffs' allegations regarding their Copyright Infringement claim had no evidentiary merit. Defendants have also accused Plaintiffs of abusing the discovery process through the improper use of subpoenas. For the following reasons, Defendants' motion will be denied without prejudice.

I.   BACKGROUND

  On October 21, 2022, Defendants filed a Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, wherein they alleged Plaintiffs' Second Amended Complaint ("SAC") contained factual allegations that lacked evidentiary and factual support, and accused Plaintiff Dawn Cutillo of filing the SAC for the improper purpose of

retaliation, and harassment and intimation of Defendants. *See* Defs. Mot. for Sanctions, ECF No. 99; *see also* Second Amend. Compl., ECF No. 67 ("SAC"). In support of their motion, Defendants cited three videos made by Dawn Cutillo and an email sent from Dawn Cutillo to IHA management, all of which they contend are proof of Dawn Cutillo's improper purpose. *See* ECF No. 99, Ex's. A-D. Plaintiffs responded on November 14, 2022, claiming the Court's disposition of Plaintiffs' Copyright Infringement claim in the SAC is irrelevant to Defendants' motion, and the content of the video exhibits does not support the conclusion that Dawn Cutillo filed this action for the purposes of retaliation, harassment or intimidation, nor do the videos warrant any sanctions. *See* Pls. Resp. to Defs. Mot. for Sanctions, ECF No. 101. On January 17, 2023, during a status conference with the parties, Defendants accused Plaintiffs of abusing the discovery process in this case through the improper use of subpoenas. The Court directed Defendants to seek leave to supplement their pending Motion for Sanctions.

Defendants moved for leave to supplement their motion for sanctions, and their Supplemental Brief was deemed filed on February 27, 2023. *See* Defs. Supp. Brief, ECF No. 120. In their supplemental brief, Defendants accused Plaintiffs of issuing subpoenas to Meta Platforms, Inc. and Verizon that were outside the scope of permissible discovery in an effort to investigate a defamatory Instagram post. *See id.* Defendants also supplemented their motion with emails sent from Dawn Cutillo to IHA management regarding the removal of IHA managers, and a threat to pull the IHA license. *See id.* at Ex's. E-F. Plaintiffs filed their response on March 27, 2023, arguing the subpoenas had a legitimate purpose and the emails sent from Dawn Cutillo to IHA management were not improper. *See* Pls. Resp. to Defs. Supp. Brief, ECF No. 125.

## II. LEGAL STANDARD

Under FEDERAL RULE OF CIVIL PROCEDURE 11:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R. Civ. P. 11(b)(1), (3). If sanctions are warranted, "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. Fed.R. Civ. P. 11(c)(2). In a motion for sanctions pursuant to Rule 11, "[a] district court must determine whether the attorney's conduct was 'objectively reasonable under the circumstances.'" *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010), *as amended* (Dec. 7, 2010) (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994)). Reasonableness has been defined as "'objective knowledge or belief at the time of the filing of the challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)). Sanctions pursuant to Rule 11 "may be awarded in exceptional circumstances in order to 'discourage plaintiffs from bringing baseless actions or making frivolous motions.'" *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) (quoting *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other

paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989).

### III. DISCUSSION

#### A. Defendants Claim Plaintiffs' SAC Lacked Evidentiary or Factual Support.

Defendants claim Plaintiffs' SAC contains factual contentions and allegations that lack any evidentiary support. They allege Plaintiffs' theory of the case, specifically regarding the Copyright Infringement claim that has since been dismissed, has inconsistently shifted from their SAC to their response to Defendants' Motion to Dismiss, and then again in their Motion for Reconsideration. Defendants first point to Plaintiffs' allegation in the SAC that Defendants have misused the materials for a natural hormone therapy program, which is referred to as "the Works." *See* SAC at ¶ 17. Then, in their response to Defendants' Motion to Dismiss, Plaintiffs argued the License Agreement did not contain "the Works." *See* Pls. Resp. to Defs. Mot. to Dismiss, ECF No. 71. Defendants state this argument contradicted Plaintiffs' previous claim in their SAC. Finally, in their Motion for Reconsideration of the Court's decision on the motion to dismiss, Plaintiffs argued, for the first time, that IHA was not an exclusive user of the copyright for "the works," because the license was never fully transferred to IH, LLC by its original owner, Dawn Cutillo. *See* Pls. Mot. for Reconsideration, ECF No. 78.

In response, Plaintiffs dispute Defendants' allegations the SAC and subsequent motion papers lacked evidentiary or factual support, noting the Court did not deem the Copyright Infringement claim frivolous in its decisions on Defendants' Motion to Dismiss and Plaintiffs' Motion for Reconsideration, and, that Defendants did not previously move for Rule 11 sanctions with respect to this claim. Additionally, Plaintiffs argue Defendants' consent to entry of a preliminary injunction based on the Copyright Infringement claim is further evidence this claim had potential merit.

4

From the SAC through the Motion for Consideration, Plaintiffs did present shifting theories regarding the Copyright claim. The question we must consider is whether these claims were "well-grounded in law and fact" at the time of filing of the SAC. *Ford Motor Co.*, 930 F.2d at 289. The issue of sanctions here is a close call. While Plaintiffs' theory regarding the Copyright Infringement claim shifted between the SAC, their response to Defendants' motion to dismiss and Plaintiffs' Motion for Reconsideration, and Plaintiffs have presented rather circuitous argument on this issue, we find Plaintiffs' Copyright Infringement claim in the SAC was just on this side of "patently unmeritorious or frivolous." *Ario*, 618 F.3d at 287. Thus, the Court will deny Defendants' Motion for Sanctions on the grounds the SAC lacked evidentiary or factual support.

### B. Defendants Claim Plaintiffs Filed the SAC for an Improper Purpose.

Defendants claim Plaintiffs' purpose in filing the SAC was retaliation for Dawn Cutillo's perceived shutout from the company, and to intimidate and harass current IHA management into stepping down from their positions, and if all else fails damaging IHA to the point of insolvency. In support of these allegations Defendants rely on videos made by Dawn Cutillo and emails sent from Dawn Cutillo in 2022 and 2023.

#### 1. Retaliation

Defendants claim Plaintiffs' purpose in filing the SAC was retaliation for a perceived exclusion from the company. Defendants attached three videos to their motion, two of which they claim support their theory of retaliation. *See* ECF No. 99, Ex's A & C. Both of these videos feature Dawn Cutillo speaking directly into the camera. Defendants first point to Exhibit C, a 93-minute video that shows Dawn Cutillo making a series of statements directed towards Jennifer Cutillo, the wife of David Cutillo and current CEO of IHA. Defendants have highlighted Dawn Cutillo's statement of "When I'm attacked, I do retaliate, and that's something

5

I need to work on." ECF No. 99, Ex. C. at 2:28. Defendants also point to Exhibit A, which is a nine-minute video wherein Dawn Cutillo discusses a dispute between IHA management and a former franchisee, Kim Petry ("Petry"), and conversations she had with Petry regarding the dispute. Defendants claim the video shows Dawn Cutillo admitting to telling Petry she should sue or threaten to sue IHA if IHA management does not renew Petry's franchise agreement. *See id.* at 4:30. They also point to Dawn Cutillo's statements in that same video regarding the current litigation and the potential impact of another lawsuit against IHA. *See id.* at 4:47. Defendants claim this video is proof Dawn Cutillo is attempting to leverage another lawsuit against IHA to help her cause.

In response, Plaintiffs contend Dawn Cutillo's "retaliation" statement from Exhibit C was a general statement made about herself, and was not meant to indicate her purpose of the lawsuit was to retaliate against any person. Plaintiffs then argue that Dawn Cutillo's conversations with Petry, which are the subject of Exhibit C, took place well after this lawsuit was initiated.[1] Finally, Plaintiffs contend Dawn Cutillo's comments toward Defendants regarding another potential litigation and its impact on this case are not actionable and not out of the ordinary.

The parties do not dispute Plaintiff made these videos. Plaintiffs urge the Court not to make a determination on Defendants' claim of improper purpose based on the videos alone. And while the Court is not going to make such a determination from these videos, the Court does find the videos to be inappropriate, given the status of litigation. The time will come for confrontation in this case, whether it be through deposition or trial. But a video is not the appropriate forum.

The Court is also not persuaded by the cases cited by Defendants. *See Lal v. Borough of*

---

[1] It should be noted Defendants' motion does not seek sanctions related to the initial filing of the lawsuit – their motion requests sanctions related to the drafting of the Motion to Dismiss the SAC, Defendants' answer to the SAC, and the instant motion.

*Kennett Square*, 935 F.Supp. 570, 576 (E.D.Pa. 1996), *aff'd*, 124 F.3d 187 (3d Cir. 1997); *Conklin v. Warrington Twp.*, 05-CV-1707, 2006 WL 2246415 (M.D.Pa. August 4, 2006), *aff'd*, 304 Fed.Appx. 115 (3d Cir. 2008); *Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121 (D.N.J. 1998). These cases, while instructive, involved egregious claims wherein Courts determined that sanctions were warranted. In *Lal*, sanctions were imposed after the Court found plaintiff's complaint was filed for the improper purpose of harassing the defendants and to retaliate against their attempted enforcement of the borough's housing code. *Lal*, 935 F.Supp. at 576. The plaintiff in that case had filed a § 1983 action against a judge, a borough and borough officials after he was convicted of hundreds of housing code violations. *Id.* at 572. In *Conklin*, sanctions were imposed against a plaintiff's attorney in response to court filings that accused the court of "incompetence, deception and racism." *Conklin*, 2006 WL 2246415 at *1. The Court found the attorney's submissions were filed in retaliation for a previous sanctions order. *Id.* The attorney had previously been sanctioned by that court in unrelated cases for inappropriate submissions and presenting unfounded allegations. *Id.* at *2. In *Thomason*, the Court imposed sanctions against an attorney who, after being forced to withdraw as counsel in a patent infringement case, filed a civil rights action in state court against the defendant's counsel and their corporation. *Thomason*, 182 F.R.D. at 122. The Court found there was "clearly no purpose" in pursuing the civil rights lawsuit in state court other than to harass his adversary or perhaps to prevent his adversary from appearing in the patent infringement case. *Id.* at 130. The conduct of the sanctioned parties in the cited cases was blatantly egregious. And while Dawn Cutillo's behavior was inappropriate, particularly with respect to her videos, it does not rise to the level of sanctionable behavior described in the cases cited above by Defendants.

2.  Harassment and Intimidation

Defendants claim Dawn Cutillo's true purpose in filing the SAC is to harass and intimidate IHA management into resigning their positions, and if all else fails to make the company insolvent. To support their claim, Defendants rely on the videos discussed above, as well as emails sent by Dawn Cutillo in 2022 and 2023.

As to the removal of IHA management, Defendants point to the video in Exhibit C where Dawn Cutillo states "The initial goal with the lawsuit, Jen, is pretty plain … I didn't think he was right, but it was just to remove inexperienced management, which would include David." *See* ECF No. 99, Ex. A. at 30:43. Defendants also cite two emails sent by Dawn Cutillo in January 2023, which they contend demonstrate her true purpose of harassment and intimidation. *See* ECF No. 120, Ex's. E-F. In the first email, which was sent on January 16, 2023, Dawn Cutillo threated to "pull [her] license from IHA" if IHA management did not accept franchisee Lane Peterson's franchise disclosure document by January 20, 2023 at 5p.m. *See* ECF No. 120, Ex. E. In that same email Dawn Cutillo stated that "termination of the license will lead to IHA's dissolution because with IH's methodology IHA has no business." *Id.* She also stated that an email and certified letter would have to be sent to franchisees to prevent misinformation, with the caveat that if a settlement is reached via buyout, the action on her part would be "inconsequential." *Id.* In the second email, dated January 23, 2023, Dawn Cutillo stated "It was never about suing the company, it's about having improper, experienced management step down, which you refuse to do causing the thousands of dollars in legal fees[.]" *See* ECF No. 120, Ex. F. Defendants claim Dawn Cutillo's statements in the video and emails are proof that she filed the SAC and continues to maintain her claims for the improper purpose of harassment and intimidation, while noting that the SAC does not contain a cause of action that would result in

the removal of management.

As to Dawn Cutillo's statement in Exhibit C regarding the removal of management, Plaintiffs state Dawn Cutillo is not a lawyer and was not making a formal analysis of the claims in her lawsuit. Plaintiffs contend that removal of both David and Jennifer Cutillo is a remedy under the terms of the Operating Agreement and through her state law claim for dissociation. As to the January 2023 emails sent by Dawn Cutillo, Plaintiffs claim the emails were "not improper." They claim that under the License Agreement, IH may terminate the license for the BeBalanced methodology in the event IHA fails to administer the methodology in accordance with IH specifications. They then cite to Count VII of the SAC, which seeks to terminate the Licensing Agreement on the basis that Defendants have" anticipatorily repudiated their obligations." Plaintiff also cites to the IHA Operating Agreement, which they claim requires Plaintiff's approval to make any salary or employment decisions and is relevant to Count V of the SAC, which seeks to dissolve IHA. Plaintiffs contend Counts IV (dissociation) and V (dissolution) of the SAC, if successful, would result in the expulsion of IHA management, notably David and Jennifer Cutillo. Plaintiffs contend sanctions are not warranted because their causes of action include a remedy of removal.

As to their claim that Dawn Cutillo's goal is IHA insolvency, Defendants cite to an email sent by Dawn Cutillo to IHA management on August 5, 2022, where she stated "…and if the company becomes 'insolvent,' the contract says that I can take the name and my IP and start over again." *See* ECF No. 99, Ex. D. They then point to Exhibit A, wherein Dawn Cutillo discusses the dispute between Petry and IHA management, and Petry's potential lawsuit Petry. *See* ECF No. 99, Ex. A. Defendants argue the video and email are proof that Dawn Cutillo's motivation is to make the company insolvent in the event she is not given control of IHA.

9

With respect to the email, Plaintiffs aver the Licensing Agreement permits Dawn Cutillo to terminate the agreement in the event IHA becomes insolvent. Additionally, Plaintiffs state these statements are relevant to the Claim for Accounting found in Count IX of the SAC. With respect to the video regarding Petry's potential lawsuit, Plaintiffs claim Petry contacted Dawn Cutillo during Petry's dispute with IHA management, and that Dawn Cutillo actually interceded to avoid a lawsuit against IHA.

Lastly, Defendants also point to several parts of the video in Exhibit C they claim shows an intent to harass and intimidate. Specifically, Defendants cite Dawn's inflammatory comments towards Jennifer Cutillo and Dawn Cutillo's threat of litigation against her. *See* ECF No. 99, Ex. C at 22:50. They also cite Dawn Cutillo's warning to David Cutillo that he may need to perjure himself in this case, and by doing so could be sent to prison. *Id.* at 22:56. With respect to the statements made in this video, Plaintiffs state Dawn was simply exercising her First Amendment right to express her opinions, and that her statements regarding intent to bring a lawsuit should not be construed as extortion, because they were just that: mere statements.

Throughout the course of this litigation, this family business dispute has been hampered by discovery disputes, accusations of improper purpose and retaliation, bad blood, and at times bizarre and inappropriate behavior. Plaintiff Dawn Cutillo, through the SAC, seeks to dissociate David Cutillo from IHA, which would make her the majority member of the company. In the alternative, her SAC seeks to dissolve IHA due to what Plaintiffs have alleged is David Cutillo's ongoing course of conduct. Therefore, statements made by Dawn Cutillo either through video or email about the removal of IHA management and potential insolvency do not, on their own, show an improper purpose in filing the SAC and maintaining Plaintiffs' claims. Based on the representations of the parties presented thus far, the Court is not going to impose sanctions at this

time.

However, the Court does take issue with some of Dawn Cutillo's behavior. As discussed above, videos are not the appropriate forum for confrontation during a litigation. The Court issues a similar warning regarding emails, paying close attention to Dawn Cutillo's January 16, 2023 email wherein she threatened to pull the license from IHA – the license that is a subject of the current litigation. While it should be noted that Dawn Cutillo did not ultimately pull the license, her threatening email was highly inappropriate and has no place in this litigation. While the Court is not imposing sanctions at this time, Dawn Cutillo is advised not to send any more inflammatory communications to her adversaries in this litigation while the case is still pending. The Court does not take these motions lightly and expects all parties to conduct themselves accordingly as the litigation proceeds to the next phase.

### C. Defendants Claim Plaintiffs Have Abused the Discovery Process.

Defendants have accused Plaintiff of abusing the discovery process by issuing subpoenas to Verizon and Meta Platforms, Inc., following a social media post from July 2022, wherein a user accused Dawn Cutillo of sexual relations with a man at one of their locations. After becoming aware of the post, Jennifer Cutillo sent Dawn Cutillo an email stating, "Our team took a screenshot, then immediately deleted it. I sent it to you out of courtesy – I knew you would occasionally entertain men in your center after hours, but the details are none of my business." *See* ECF No. 120, Ex. B. Plaintiffs subsequently served Defendants with a "Second Set of Document Requests and Interrogatories" related to the Instagram comment, and issued subpoenas to Meta Platforms, Inc. and Verizon for information regarding the identity of the Instagram user. Defendants claim the subpoenas exceed the scope of discovery and were issued solely to further Dawn Cutillo's own personal investigation into the social media post. Plaintiffs respond that such information is

11

relevant to their counts for breach of fiduciary duty, violation of the Pennsylvania Uniform Limited Liability Company Law of 2016, dissociation of David Cutillo, and in the alternative for dissolution of IHA. Plaintiffs cite paragraph 26(l) of the SAC, wherein Plaintiffs accuse David Cutillo of making "slanderous statements" about Dawn Cutillo to IHA franchisees, employers and vendors. Plaintiffs argue that based on the nature of the Instagram post and the email from Jennifer Cutillo discussed above, they had reason to believe David and/or Jennifer Cutillo orchestrated the defamatory Instagram post.

Evidence is relevant in discovery if it "[encompasses] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As a result, discovery rules are to be considered broadly and liberally. *See id*. Plaintiffs contend the evidence sought through the subpoenas to Meta Platforms, Inc. and Verizon are relevant to several claims in their complaint, including Plaintiffs' allegation that David Cutillo has spread defamatory statements about Dawn Cutillo to IHA franchisees and vendors and employees. Plaintiffs claim they have reason to believe David and/or Jennifer Cutillo were behind the defamatory social media post. Plaintiffs also note these subpoenas were not contested by Defendants, Meta or Verizon.

While this is a close call, the Court does see a potential path for relevance given the status of the litigation, the nature and content of the social media post, and the email sent from Jennifer Cutillo to Dawn Cutillo following the discovery of the social media post. This path of relevance, albeit a narrow one, could lead to the discovery of admissible evidence regarding Plaintiffs' claims discussed above, and their allegations in the SAC. Therefore the Court will not impose sanctions at this time.

And because Rule 11 sanctions are "normally…determined at the end of litigation," the

Court will deny Defendants' motion without prejudice. *Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv., LLC*, No. 04-2593, 2006 WL 1098235, at *16 (D.N.J. Mar. 31, 2006) (quoting *Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998)); *see Magerman v. Mercer*, No. 17-CV-3490, 2018 WL 684806, at *4 (E.D. Pa. Feb. 2, 2018).

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion is denied.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

13