**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DAWN CUTILLO, *et al.*,             :
          Plaintiffs,          :
                            :
          v.                 :
                            :
DAVID CUTILLO, *et al.*,           :
          Defendants       :     Civil No. 5:21-cv-02787-JMG
                            :
          and               :
                            :
IHA DISTRIBUTION, LLC        :
          Intervenor       :

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                            **June 30, 2023**

## I.   OVERVIEW

Plaintiffs Dawn Cutillo and Infinity Health, LLC ("IH") have alleged claims against Defendants David Cutillo, Infinity Health Advisors LLC, ("IHA"), and intervenor IHA Distribution, LLC ("IHAD"). Plaintiffs' claims arise out of a dispute with Defendant David Cutillo, Dawn Cutillo's older brother, regarding their joint commercialization and franchising of the natural hormone balancing methodologies Dawn Cutillo developed. Before the Court is Defendants' Motion for Partial Summary Judgment. For the reasons that follow, the motion is granted in part.

## II.   BACKGROUND

### A.  Relevant Facts

Plaintiff Dawn Cutillo and Defendant David Cutillo are sister and brother. Defs. Statement of Undisputed Facts ("DSOF") at ¶ 1; Pls. Resp. to Defs. Statement of Undisputed

Facts ("PRSOF") at ¶ 1.  Dawn Cutillo began creating a natural hormone therapy program in

2009 operating commercially under Infinity Health, LLC ("IH").  DSOF at ¶¶ 2-3; PRSOF at ¶¶

2-3.  This program consisted of various methodologies and systems.  DSOF at ¶ 2; PRSOF at ¶ 2.

Dawn Cutillo is the sole serving member of IH.  DSOF at ¶ 4; PRSOF at ¶ 4.

In 2014, Dawn Cutillo and David Cutillo formed Infinity Health Advisors, LLC ("IHA")

to pursue "BeBalanced," a franchise business centered on the natural hormone therapy program

created by Dawn Cutillo.  DSOF at ¶¶ 5-6; PRSOF at ¶¶ 5-6.  David Cutillo owns 80% of the

membership interests in IHA, and is the manager and majority owner.  DSOF at ¶ 7; PRSOF at ¶

7.  Dawn Cutillo and IH own 15% and 5% of IHA, respectively.  DSOF at ¶ 8; PRSOF at ¶ 8.

IHA maintains an email server for the domain @bebalancedcenters.com.  DSOF at ¶ 13;

PRSOF at ¶ 13.  Dawn Cutillo, as well as members of IHA's corporate staff and IHA franchisees

have been authorized to use email addresses associated with the @bebalancedcenters.com

domain.  DSOF at ¶ 15; PRSOF at ¶ 15.  On August 26, 2020, Jennifer Cutillo, who was the

Director of Operations for BeBalanced, directed an employee to block emails sent from Dawn

Cutillo's BeBalanced email account to six IHA employees.  DSOF at ¶ 18; App. to Defs. Mot.

for Partial Summ. J., ECF No. 131.3 at 363; PSOF at ¶ 18.  Jennifer Cutillo then instructed the

same employee to to block emails received from Dawn Cutillo's personal email address.  DSOF

at ¶ 19; ECF 131.3 at 363; PSOF at ¶ 19.  On June 2, 2022, Jennifer Cutillo directed that Dawn

Cutillo's emails from both her personal and BeBalanced email addresses be unblocked from

Jennifer and David's emails.  DSOF at ¶¶ 20-21; PSOF at ¶¶ 20-21.

After Dawn Cutillo discovered she was unable to send or receive emails from certain

individuals she retained the services of Sean Williams ("Williams"), an information technology

consultant.  *See* Decl. of Dawn Cutillo, ECF 134.1 at ¶ 8.  As evidence, Dawn Cutillo provided

invoices from Mr. Williams spanning from October 9, 2020 through December 30, 2021.  *See*

ECF No. 134.1.  These invoices included the amount of time Mr. Williams worked, a brief

description of the work completed, and the hourly costs associated with the work.  *See* ECF No.

134.1  Most of these descriptions pertained to the issues Dawn Cutillo was having with her

emails.  *See id*.  The total amount paid to Williams over that period was $5,500.  *See id.*

### B.  Procedural History

Plaintiffs commenced this lawsuit against Defendants on June 23, 2021 alleging claims of

Copyright Infringement, a violation of the Computer Fraud and Abuse Act ("CFAA"), and

various related state law claims.  *See* ECF No. 1.  The Court granted IHA Distribution, LLC's

motion to intervene on April 11, 2022.  *See* ECF No. 61.  Plaintiffs filed an Amended Complaint

on November 19, 2021, and then a Second Amended Complaint ("SAC") on April 29, 2022.  *See*

ECF Nos. 40 & 67.  Defendants then filed a motion to dismiss the SAC.  *See* ECF No. 70.

On June 22, 2022, the Court dismissed Plaintiffs' copyright infringement claim and state-

law fraudulent inducement claim.  *See* ECF Nos. 75 & 76.  Defendants' motion to dismiss

Plaintiffs' CFAA claim and remaining state law claims was denied.  *See id*.  Following the

Court's decision Defendants and IHAD raised several state-law counterclaims against Dawn

Cutillo and IH.  *See* ECF No. 85.  On May 18, 2023, Defendants moved for partial summary

judgment on Plaintiffs' CFAA claim.  *See* ECF No. 131.  Plaintiffs filed a response on June 1,

2023, *see* ECF No. 134, and Defendants filed a reply on June 8, 2023.  *See* ECF No. 138.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

Facts are material if they "might affect the outcome of the suit under the governing law."

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute as to those facts is genuine

if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

(quoting *Anderson*, 477 U.S. at 248).  "We view all the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor."  *Id.* (internal quotation marks and

citation omitted).

The party moving for summary judgment must first "identify [] those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response,

the nonmoving party must "designate specific facts showing that there is a genuine issue for trial."

*Id.* at 324.  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position

will be insufficient; there must be evidence on which the jury could reasonably find for the

[nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*,

477 U.S. at 252).

## IV.    DISCUSSION

Defendants move for partial summary judgment with respect to Plaintiff IH's CFAA claim.

The CFAA is a criminal statute that also provides civil remedies under certain circumstances. *See*

*P.C. Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC*, 428 F.3d 504, 511

(3d Cir. 2005).  Plaintiff IH's claim arises from 18 U.S.C. § 1030(a)(5)(A), which provides a civil

cause of action against a defendant who "knowingly causes the transmission of a program,

information, code, or command, and as a result of such conduct, intentionally causes damage

without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A).  The CFAA defines

"damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). A "protected computer" is a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. §1030(e)(2)(B).

In a civil claim for violation of the CFAA the Plaintiff must also meet the requirements of 18 U.S.C. § 1030(g), which states that "[a] civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  Plaintiff IH proceeds under 1030(c)(4)(A)(i)(I), wherein they allege the Defendants' conduct caused a "damage or loss to one or more persons during any 1-year period…aggregating at least $5,000 in value."  18 USC §§ 1030(c)(4)(A)(i)(I), 1030(g).

Defendants make several arguments with respect to Plaintiff IH's CFAA claim.  First, they argue any alleged "damages" were authorized, in that IHA was authorized to block Dawn Cutillo's emails within its own email system and server.  Next, they argue Defendants did not cause, and nor did they intend to cause, damage to IH's computers.  Finally, Defendants argue Plaintiff IH has failed to produce sufficient evidence to satisfy the loss element of a CFAA claim, in that the fees provided to the consultant were unreasonable, and, they do not meet the CFAA's $5,000 loss requirement.

The Court finds that Plaintiff IH's CFAA claim fails because they have failed to produce sufficient evidence to establish they incurred a loss aggregating in at least $5,000 over a one-year

period as a result of the Defendants' actions.  As such, the Court will focus its analysis strictly on this issue.

### a.  Aggregate Loss

In order to establish their claim under the CFAA, Plaintiff IH must show they sustained a loss "aggregating at least $5,000 in value" during a one-year period as a result of Defendants' violation.  18 U.S.C. § 1030(g); *see Grant Mfg. & Alloying, Inc. v. McIlvain*, 499 F. App'x 157, 159 (3d Cir. 2012).  "Numerous district court decisions in the Third Circuit have held that to fall within this definition of 'loss,' the 'alleged "loss" must be related to the impairment or damage to a computer or computer system.'" *Sealord Holdings, Inc. v. Radler*, No. 11–6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (quoting *Fontana v. Corry*, No. 10–1685, 2011 WL 4473285, at *7 (W.D. Pa. Aug. 30, 2011)).  Payment to an expert to identify and remedy damage to a computer has been found to be a cognizable loss under the CFAA.  *See Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccarro*, No. 06–2175, 2007 WL 1847435, at *5 (W.D. Pa. June 25, 2007); *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013); *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. CIV.A. 09-2751, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011) ("A compensable 'loss' under the CFAA … is the cost of remedial measures taken to investigate or repair the damage to the computer…").

Defendants argue the costs associated with Mr. Williams's work were unreasonable because Dawn Cutillo could have resolved the email issues by using a different email account.  Defendants also argue that not all of the costs reflected in the invoices can be attributed to their conduct, as Dawn Cutillo testified in her deposition that Williams "was a long-term person that I had been using for my business day-to-day computer problems.  Yes.  So but I didn't hire him just for this."  Defs. Reply in Further Supp. Of Mot. For Summ. J., ECF No. 138 at 3, n.2; *see* ECF

No. 131.3 at 363.  In their motion response, Plaintiff IH claims they engaged IT consultant Williams to identify and remedy the issues concerning Dawn Cutillo's ability to send and receive emails from franchisees and others.  Plaintiffs attached the invoices[1] from Mr. Williams to their motion response.  The Court need not address whether the costs reflected in the invoices can be attributed to the conduct of Defendants because they fail to meet the CFAA's requirement of a $5,000 loss within a one year period.

Throughout the course of this litigation, Plaintiffs have maintained the loss they incurred was the more than $5,000 they paid to Mr. Williams to address the issues regarding Dawn Cutillo's email access.  In their motion for summary judgment response, Plaintiffs attached invoices from consultant Williams for the services provided.  These invoices were detailed as follows:

1. Invoice number 20-1 dated October 9, 2020 in the amount of $1,000

2. Invoice number 20-2 dated October 13, 2020 in the amount of $800

3. Invoice number 20-3 dated November 15, 2020 in the amount of $600

4. Invoice number 20-4 dated December 30, 2021 in the amount of $700[2]

5. Invoice number 21-1 dated February 9, 2021 in the amount of $400

---

[1] In addition to a Declaration from Plaintiff Dawn Cutillo, Plaintiffs attached invoices from consultant Williams to their motion response.  In their reply brief, Defendants state these invoices were not produced in discovery.  Defendants construed the invoices in favor of Plaintiffs with respect to the instant motion, but ask that the Court prohibit Plaintiffs from using said invoices for any other purpose moving forward.  Defendants argue the late production prevents them from investigating the authenticity and accuracy of the invoices.  Defendants also argue they will be prejudiced by further use of the invoices, and, that Plaintiffs have provided no justifiable reason for the late production.  The Court will consider the invoices with respect to the instant motion, but declines to make a ruling at this time regarding any further use of the invoices, as Plaintiffs have failed to produce sufficient evidence to reach the $5,000 threshold under the CFAA.

[2] This invoice was labeled 20-4 but is dated December 30, 2021.  Therefore it is unclear if the correct date for this invoice is December 30, 2020 or December 30, 2021.  In any case, the total amount for the invoices would not reach $5,000 within a one-year period.

6.  Invoice number 21-2 dated March 5, 2021 in the amount of $500

7.  Invoice number 21-3 dated March 23, 2021 in the amount of $300

8.  Invoice number 21-4 dated May 14, 2021 in the amount of $500

9.  Invoice number 21-5 dated October 30, 2021 in the amount of $700

*See* ECF 134.1.

Notwithstanding the issues raised by Defendants that are described in footnote one, these invoices do not meet the CFAA's requirement of a loss aggregating in at least $5,000 over a one-year period.  The total amount of the invoices attached is $5,500, and they range from October 9, 2020 through December 30, 2021.  At best, considering the one year period following the October 9, 2020 invoice and including invoice number 20-4, *see* footnote two, Plaintiff IH would be able to show they incurred a $4,800 loss during that period.  And if the Court was to consider the one year period following the October 13, 2020 invoice, Plaintiffs would be able to show they incurred a $3,800 loss.  While Plaintiffs claim the invoices total more than $5,000 within the one year period, the invoices say otherwise.  And Plaintiff IH has not produced any other evidence to establish they incurred a loss of more than $5,000 within a one year period.  Plaintiff IH has thus failed to produce sufficient evidence for a reasonable jury to find that the $5,000 requirement was satisfied.  *See Grant*, 499 Fed.App'x at 159.  Accordingly, Plaintiff IH's CFAA claim fails, and the Court need not address Defendants' other arguments regarding the CFAA claim.  Summary judgment is therefore granted to Defendants with respect to Count Eight of the SAC.

**b. Supplemental Jurisdiction**

Upon granting summary judgment to Defendants regarding Plaintiff IH's CFAA claim, the remaining counts in the Second Amended complaint allege state law claims only. Defendants' and IHAD's counterclaims also assert violations of state law only. Pursuant to 28 U.S.C.A. § 1367(c)(3), "a federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction." *Doe v. Mercy Medical Center*, 850 F.3d 545, 567 (3d Cir. 2017). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Typically, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Given this guidance, we will decline to exercise supplemental jurisdiction over Plaintiffs' remaining claims and Defendants' and IHAD's counterclaims. They will be dismissed without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).

## V.  CONCLUSION

For the reasons set out in this memorandum, summary judgment is granted with respect to Count Eight of the SAC.[3]  The Court declines to exercise supplemental jurisdiction as to Plaintiffs' remaining state law claims and Defendants' and IHAD's counterclaims.  As such these claims are dismissed without prejudice.  The parties should be aware the period of limitations for these claims was tolled while these claims were pending and "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  27 U.S.C. § 1367(d).  An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[3] Defendants also moved for partial summary judgment with respect to portions of Counts Two and Three of the SAC to the extent they are based on a theory of damages for lost investment income, lost profits and lost installment payments.  In declining to exercise supplemental jurisdiction, Counts Two and Three of the SAC were dismissed without prejudice.